## Case No. 12,730.

### SHEAFF et al. v. SEVENTY HOGSHEADS AND NINE BARRELS OF SUGAR.

[Bee, 163.] [1]

District Court, D. South Carolina. Oct. 24, 1800.

ADMIRALTY—CONDEMNATION IN FOREIGN COURT—RIGHT TO INQUIRE INTO.

Condemnation in a French court of admiralty of property carried into the ports of an ally, connot be inquired into by the courts of this country.

In admiralty.

BEE, District Judge. This is a suit instituted by libel in this court against 70 hogsheads and 9 barrels of sugar, part of the cargo of the brig Betsey, late the property of Sheaff & Turner of Portsmouth in the state of New Hampshire. It appears from the pleadings and evidence in this cause, that the brig Betsey sailed from the island of Trinidad, then in possession of Great Britain on the 22d April, 1798, bound to Portsmouth; on the 5th of May she was captured by the French privateer Pluvoyer, Pierre Olancier, master, belonging to, and commissioned at Cape Francois, and carried into the Havanna. That previous to her arrival Captain Turner of the brig Betsey had agreed with the Frenchman to give him 4,000 dollars to restore the vessel and cargo; in consequence of which he was put in possession, and remained so for upwards of twenty-four hours; but, on some difficulties being raised by St. Mary & Cuesta, the merchants to whom he was recommended, and to whom he applied for the money, he was dispossessed of his vessel again, and though he offered the money soon after, yet was refused possession; the French captain telling him she was already sold. It appears that Mr. Cuesta, immediately after he declined the advance of the money, offered the Frenchman 5,000 dollars for vessel and cargo for a gentleman of Charleston, supposed to be Mr. Price, one of the claimants; this happened on or about the 3d of June, 1798. It appears that some time after, the brig Fanny, Captain Ormond, went alongside the Betsey, and took out the seventy hogsheads and nine barrels of sugar which she landed in Charleston about the beginning of September following; soon after which this suit was instituted. It appears from the exhibits that on the 16th June, 1798, the American consul at the Havanna, obtained from St. Mary & Cuesta a guarantee for the legal condemnation of the brig and cargo, or security for a refund of the amount she sold for: and a certificate is also exhibited, signed by the said American consul on the 18th October following, and annexed to a true copy of the original condemnation at the Cape, dated the 29th Messidor, An 6, which answers to

---

1 [Reported by Hon. Thomas Bee, District Judge.]

the ——— day of July, 1798. An invoice has also been produced to shew that these sugars were shipped at the Havanna for Charleston on the 6th August, subsequent to the condemnation.

In arguing this case, three questions have been made and a variety of reasoning and a number of authorities produced on both sides. 1st. Whether any right was transferred by the capture, without being carried infra præsidia of the nation to which the privateer belonged. 2d. Whether the condemnation at the Cape of the vessel in the Havanna was sufficient to transfer the property sold previous to such condemnation, and 3d. Whether this court can reverse the decision at the Cape and set it aside for irregularity.

As to the first point, it seems at this day to be the general practice of the law of nations, to require a sentence of condemnation to vest the property in the captors and divest the former owner of all right; it is unnecessary, therefore, to say more on this head.

There having been such sentence of condemnation, I will consider the second point, whether that sentence under all the circumstances is legal and binding. It was contended with great earnestness, that the purchase was made previous to condemnation, and that by a court at a distance, not having the subject matter under their immediate jurisdiction: and the case in Sir William Scott's Reports [1 C. Rob. Adm.] 135 et seq. was much relied on. Almost the whole reasoning in that case turned on the legality of a sentence of condemnation in a neutral port, and therefore does not apply in the present case. The judge there declares the irregularity of proceedings where the body and substance of the thing is not in the country exercising the jurisdiction. He nevertheless admits the fact as to two cases of ships carried into foreign ports and condemned in the court of admiralty in England: but he does not pretend to say that the sentence was not binding, but endeavours to shew that the ports of Lisbon and Leghorn. into which those vessels were carried. have a peculiar and discriminate character. that to a certain degree assimilates them to British ports. If we consider the relative situations of France and Spain in the present war, and the practice that has prevailed. we find from the evidence that it is the usual mode of sending the papers of captured vessels from the Havanna to the Cape for condemnation, and that all the vessels and cargoes that have been carried in there have been sold under such sentences. That these papers are lodged with an officer at the Havanna called the receiver of the rights of the republic of France, and copies certified by him are transmitted to the Cape. on which the court there exercises jurisdiction. The inference then must naturally follow, that this officer is authorized by the Spanish as well as the French government, and the proceedings sanctioned by them. Indeed the guarantee taken by the American consul and stipulation entered into with him, is, in my opinion. conclusive .evidence on this point; if so, the port of the Havanna has the same peculiar and discriminate character as to France, that Sir William Scott states the ports of Lisbon and Leghorn to bear to Great Britain. As to the sale to the claimants being made previously to the condemnation, no positive proof is before the court to that point; the condemnation is in July, and the invoice of shipment dated 6th August following. The present claimants were not original vendees; but if they had been, as this part of the transaction happened on land, I doubt the jurisdiction of this court to interfere; but it is very common for sales to be made before condemnation sub modo, and the guarantee taken by the American consul appears to be in the nature of a deposit, pendente lite.

As to the third and last point contended—whether this court can reverse the decision of the court of admiralty at the Cape so as to set it.aside, I am decidedly of opinion it cannot. In the case quoted from Doug. 559. Lord Mansfield expressly lays down as a clear principle, that all the world are parties to a sentence of a court of admiralty. and that it is conclusive as to that which is within it, against all persons, unless reversed by the regular court of appeal. In that case. which was an insurance cause, Buller differed from the other judges, whose final decisions went entirely on the ambiguity of the sentence of the foreign court. so as to decide between the underwriters and the insured. In the present case, whatever irregularity there may be in other parts of the proceedings, there is no ambiguity as to the final sentence. The tribunal decrees the brig Betsey, Captain George Turner, captured by the French privateer the Pluvoyer, Captain Olancier, and carried into Havanna, a good prize. and this is certified by the American consul to be a true copy of the original condemnation.

On a serious review and consideration of this case, and the arguments on both sides. and after looking into all the cases quoted. I am of opinion that this cause cannot be retained, and I therefore decree that the libel be dismissed with costs.

This decree was affirmed. on appeal to the circuit court. [Case unreported.]